FILED

2022 Sep-12  AM 11:21
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **TOMIKA LETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:21-cv-00105-LSC** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.     Introduction

The plaintiff, Tomika Lett ("Lett" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Lett timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Lett was 42 years old at the time of her SSI application, and she has at least a high school education. (Tr. at 41, 233.) Lett's past work includes experience as a caregiver, car seat coverer, welding machine tender, line cook, and server. (Tr. at 40,

212–14.) Lett claims that she became disabled on November 29, 2018. (Tr. at 30, 105.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id*.

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id*. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *Id*.

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the

plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") first established that Plaintiff has not engaged in SGA since March 26, 2019, the date of her SSI application. (Tr. at 32, 194–207.) Next, the ALJ found that Plaintiff's obesity; degenerative disc disease of the lumbar spine; asymptomatic HIV; diabetes mellitus type 2 with diabetic neuropathy; depressive disorder; and anxiety qualify as "severe impairments." (Tr. at 32.) However, the ALJ also found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 32–36.) Following this determination, the ALJ established that Plaintiff has the following RFC:

> [T]o perform sedentary work as defined in 20 CFR 416.967(a) except that she can lift and carry 10 pounds occasionally and less than 10 pounds frequently. She can stand with normal breaks for a total of 2 hours in an 8-hour workday, and can sit with normal breaks for a total of 6 hours in an 8-hour workday. Her pushing and pulling limitations are the same as for lifting and carrying. She can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds. She can frequently balance and occasionally stoop, kneel, crouch and crawl. She must avoid concentrated exposure to extreme heat, fumes, odors, dusts, gases and poor ventilation. She cannot work around hazards such as unprotected heights. She can understand and remember simple instructions, can carry out simple and detailed instructions, and sustain

> attention to tasks for 2-hour segments to complete an 8-hour workday.
> She can occasionally interact with supervisors, the general public, and
> coworkers. She would function best with a familiar repetitive work
> routine but should avoid rapid changes and multiple demands. She can
> adapt to infrequent, well-explained changes.

(Tr. at 36–37.)

Relying on the testimony of a vocational expert ("VE"), the ALJ determined

that Plaintiff is unable to perform any of her past relevant work based on her age,

education, work experience, and RFC. (Tr. at 40, 83–84.) The ALJ also established

that Plaintiff was a "younger individual age 18-44" at 42 years old on the date of her

application, has at least a high school education, and is able to speak English, as those

terms are defined by the regulations. (Tr. at 41.) The ALJ concluded that the

transferability of job skills "is not material to the determination of disability [in this

case] because using the Medical-Vocational Rules as a framework supports a finding

that the claimant is 'not disabled,' whether or not the claimant has transferable job

skills." (*Id.*)

Given that Plaintiff cannot perform the full range of sedentary work, the ALJ

utilized testimony from the VE and the Medical-Vocational Rules to determine that

Plaintiff is capable of performing jobs with a significant number of positions within

the national economy, such as eye glass assembler, table worker, rotor assembler,

and final assembler. (Tr. at 41.) From these findings, the ALJ concluded the five-

step evaluation process by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since March 26, 2019, the date the application was filed." (Tr. at 42.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided that those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding

from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *See Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520. 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III.   Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for three reasons: (1) the ALJ improperly rejected the opinion of Dr. Sathyan Iyer, the examining consultative physician; (2) the ALJ failed to account for Plaintiff's obesity when evaluating Plaintiff's RFC; and (3) there is not substantial evidence to support

the ALJ's decision because the testimony by the VE was not based on a full and correct statement of Plaintiff's limitations and impairments. (Doc. 12 at 2.)

### A. The ALJ Accorded Proper Weight to the Medical Opinion of Consultative Examiner Dr. Sathyan Iyer.

Plaintiff argues that the ALJ's dismissal of the medical opinion of Dr. Iyer was erroneous on two grounds. (Doc. 12 at 15.) First, Plaintiff contends that the ALJ neglected to show good cause or "state with some measure of clarity" the grounds for dismissing Dr. Iyer's opinion and instead substituted her own opinion for that of Dr. Iyer. (Doc. 12 at 15, 18.) Additionally, Plaintiff suggests that the ALJ disregarded her duty to fully and fairly develop the record by failing to recontact Dr. Iyer to resolve ambiguities in his opinion. (*See* doc. 12 at 15.) The Court will address each of these arguments in turn.

### 1. The ALJ Showed Good Cause for Finding Dr. Iyer's Opinion Unpersuasive.

To be found disabled, Plaintiff had to demonstrate that she was unable to engage in any SGA by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of

the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling(s) ("SSR"s) 85-28 (Jan. 1, 1985). The burden of showing that an impairment or combination of impairments is "severe" rested at all times with Lett, as the plaintiff. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Because Plaintiff bore the burden of proving she had a severe impairment, she thus had the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1280.

The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ; there must be medical . . . findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment

that results from anatomical, physiological, or psychological abnormalities."); *see also* 20 C.F.R. § 404.1502 (defining symptoms, signs, and laboratory findings).

New regulations came into effect in 2017, which govern this case. These new regulations provide revised instructions to the ALJ for evaluating medical opinions. For claims filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c declare that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Instead, the ALJ will consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors in evaluating medical opinions and prior administrative medical findings, with the most important factors being supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c. While the ALJ must explain the role of the supportability[1] and consistency[2] factors in evaluating

---

[1] In addressing the supportability factor, the regulations instruct that "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

[2] In regard to the consistency factor, the regulations similarly explain that "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

the opinion of a medical source or administrative medical finding, she is not required to do the same for the other factors. *Id.* In responding to comments to these changes when proposed, the Social Security Administration explained:

> The supportability and consistency factors provide a more balanced and objective framework for considering medical opinions than focusing upon the factors of consistency and the medical source's relationship with the individual. A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan. 18, 2017).

In contrast, 20 C.F.R. §§ 404.1527 and 416.927, the regulations that govern claims filed before March 27, 2017, prioritize the treatment relationship, giving more weight to a treating source's medical opinion. Indeed, if the ALJ "find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [Plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff protectively filed for SSI on March 26, 2019, two years after the new regulations took effect. Therefore, the new regulations govern this case. (Tr. at 22, 165.) Plaintiff does not argue that the ALJ failed to follow the 2017 regulations but

rather that the ALJ did not adequately explain her basis for finding Dr. Iyer's opinions unpersuasive. (Doc. 12 at 18–23.)

Citing *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995), Plaintiff first argues that this Court should adopt a more stringent standard of review with respect to ALJ decisions. (Doc. 12 at 20.) In *Wilder*, the Seventh Circuit considered the ALJ's decision to disregard "the only medical evidence in the case" with "a degree of suspicion." 64 F.3d at 337. This Court declines to apply the "degree of suspicion" standard to the ALJ's assessment of Dr. Iyer's opinion for two reasons. First, the Eleventh Circuit has already declined to adopt the *Wilder* rule. *See Jones v. Soc. Sec. Admin., Comm'r*, 857 F. App'x 587, 591 (11th Cir. 2021) (expressly declining to adopt the *Wilder* "degree of suspicion" standard and holding that the ALJ did not err in finding a medical opinion to be only somewhat persuasive when the ALJ noted inconsistencies between the opinion and the other objective medical evidence); *see also Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019).

Moreover, even if *Wilder* controlled, *Wilder* is distinguishable from the facts in the present case. In *Wilder*, the Seventh Circuit considered "with a degree of suspicion" the ALJ's decision to disregard the *only* medical evidence on a critical issue in the case, but the court immediately qualified the stricter standard by noting that "[o]f course the [ALJ] is not required or indeed permitted to accept medical

evidence if it is refuted by other evidence." *See* 64 F.3d at 337–38. Here, Dr. Iyer's opinion is far from the only medical evidence that the ALJ considered in her determination of Plaintiff's RFC. (*See, e.g.*, tr. at 32–42, 88–104, 364, 368–79, 383–427, 493–97, 519–34.) As explained below, the ALJ provided multiple examples of inconsistencies between Dr. Iyer's opinions and other medical evidence. (*See* tr. at 40.) Even if the Eleventh Circuit adopted the *Wilder* standard, then, *Wilder* would nonetheless be inapplicable to these facts.

Plaintiff saw Dr. Iyer for a medical examination on July 13, 2019. (Tr. at 506.) Dr. Iyer's physical examination of Plaintiff included, *inter alia*, an evaluation of her gait, her range of motion of her upper and lower extremities, and her reflexes. (Tr. at 506–09.) Dr. Iyer noted that Plaintiff was "significantly obese" and that her gait was "very slow." (Tr. at 507.) He also stated that she had "full range of motion" of her neck, shoulders, elbows, wrists, hips, knees, and ankles but "decreased range of motion" of her lumbar spine. (Tr. at 507, 509.) Dr. Iyer concluded:

> In her current condition, [Lett] could have impairment of functions involving bending, lifting, standing for long periods, walking long distance, climbing, squatting, working at heights, working around moving machinery, overhead activities, pushing, and pulling.

(Tr. at 509.)

The ALJ found Dr. Iyer's opinion of Plaintiff's functional limitations unpersuasive. (Tr. at 40.) As the basis for her conclusion, the ALJ remarked that Dr.

Iyer's finding that Plaintiff "could have impairment of functions" was "too vague and unquantified to be of value when assessing [Plaintiff's RFC]." (Tr. at 40, 509.) Indeed, Dr. Iyer's statement that Plaintiff *could* have impairment of functions is equivocal; he expressed no certainty regarding whether Plaintiff does in fact suffer from impairments of the functions that he listed. (Tr. at 509.) Without any certainty as to the existence of Plaintiff's impairments, Dr. Iyer clearly could not opine – nor did he attempt to do so – on their extent. As one of the two most important factors, the lack of supportability alone undermines Plaintiff's argument that the ALJ erred by failing to give greater weight to Dr. Iyer's opinion. *See* 20 C.F.R. §§ 404.1520c(a), (c)(1); 416.920c(a), (c)(1); *see also Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011) ("When a . . . physician expresses uncertainty as to his own medical findings, the ALJ has no obligation to defer to his opinion.").

The ALJ's analysis of the various other medical opinions demonstrates that she considered the consistency factor in relation to Dr. Iyer's opinion and accounted for the limitations set forth therein.  The ALJ's evaluation indicated that Dr. Iyer's remarks about Plaintiff's limitations were ambiguous and conflicted with his own medical findings and other medical opinions in the record, at least to the extent that Dr. Iyer's determination of Plaintiff's limitations exceeded those that the ALJ included in her RFC finding. (*See* tr. at 40); *see also* 20 C.F.R. § 404.1520b(b)

(explaining that evidence is inconsistent when, *inter alia*, it "conflicts with other evidence, contains an internal conflict, [or] is ambiguous"). For example, the ALJ included Dr. Iyer's opinion that Plaintiff *may* have difficulty bending, lifting, pushing, or pulling. (Tr. at 40, 506–07.) However, the ALJ also mentioned Dr. Iyer's finding that Plaintiff "displayed full muscle strength of the upper and lower extremities, no significant abnormalities of the nervous system, normal grip strength and opposition functions, and a full range of motion except for the lumbar spine," highlighting the incongruency between the two findings. (Tr. at 40, 506–09.) The ALJ further pointed to the contradicting opinion of state agency medical consultant Dr. Gloria L. Sellman, who found that Plaintiff can "occasionally stoop, kneel, crouch, and crawl" based on Plaintiff's full range of motion (excluding her lumbar spine) and her full strength in the extremities. (Tr. at 40, 99, 104); *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."). Finally, the ALJ cited Plaintiff's own reports during medical examinations subsequent to Dr. Iyer's evaluation. (Tr. at 40, 523–24, 527, 530.) During such examinations, Plaintiff denied any joint stiffness or abnormal gait and reported that her back pain was improving. (*Id.*) The above examples demonstrate that the ALJ considered Dr. Iyer's opinion

together with other relevant evidence and adequately articulated her reasons for finding Dr. Iyer's opinion unpersuasive.

To the extent that Plaintiff argues that the ALJ improperly substituted her own opinion for that of medical experts, substantial evidence supports the weight that the ALJ assigned to Dr. Iyer's opinion. As an initial matter, the new regulations do not allow the ALJ to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c, 416.920c. Additionally, even under the old regulations, the ALJ does not substitute her own judgment for that of a medical opinion merely by declining to give the medical opinion much weight on the basis of inconsistency with other medical evidence in the record. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 488 (11th Cir. 2012) (holding that substantial evidence supported the ALJ's decision to assign a medical opinion "little probative weight" because "evidence on the record contradicted it") (citing *Sryrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). Here, the ALJ did not substitute her own judgment for Dr. Iyer's medical opinion but rather found his opinion unpersuasive in light of other medical evidence in the record with which Dr. Iyer's opinion was inconsistent. (Tr. at 40.)

### 2.  The ALJ Fulfilled Her Duty to Develop the Record.

Plaintiff further argues, though not explicitly, that the ALJ failed in her responsibility to fully and fairly develop the record. Plaintiff asserts that the ALJ had a duty to recontact Dr. Iyer for clarification upon finding his opinion to be "too vague and unquantified to be of value." (Doc. 12 at 16–18; tr. at 40.) For the reasons explained below, Plaintiff's argument fails.

Plaintiff erroneously relies on 20 C.F.R. § 404.1512(e). (*See* doc. 12 at 17.) Prior to March 2012, the regulations required an ALJ to recontact a medical source when "the report from [the] medical source contain[ed] a conflict or ambiguity that must be resolved, the report [did] not contain all the necessary information, or [did] not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (repealed 2012). However, new regulations took effect on March 26, 2012, that gave ALJs the discretion, not an obligation, to resolve an inconsistency or insufficiency in a claimant's medical record where other evidence in the record provides a sufficient basis for the ALJ to make a determination or decision. *See* 20 C.F.R. §§ 404.1520b(b)(1), 416.920b(b)(1) ("If any of the evidence in [the] case record . . . is inconsistent, [the ALJ] will consider the relevant evidence and see if [she] can determine whether [the claimant] is disabled based on the evidence [she] ha[s]."); *see also Tackett v. Comm'r of Soc. Sec.*, No. 21-11852, 2022 WL 2314095, at *1 (11th Cir. June 28, 2022) ("An ALJ may

discount a physician's opinion when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding.").

The ALJ may choose to exercise all or none of the available remedies to resolve an inconsistency. The ALJ has the option to contact the treating physician, ask the claimant for additional records, request a consultative examination, or ask the claimant and/or others for more information. *Id.* The ALJ is not required to take any of those steps if she determines that weighing the available evidence will be sufficient. *Id.* Where sufficient evidence supports the ALJ's findings and decision, the ALJ has no duty to seek additional medical testimony. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

It is still true that the ALJ had a duty "to develop the facts fully and fairly and to probe conscientiously for all of the relevant information." *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). However, as in all social security disability cases, Plaintiff bore the ultimate burden of proving disability and the responsibility for furnishing or identifying medical and other evidence regarding her impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty*, 245 F.3d. at 1280; 42 U.S.C. § 423(d)(5)(A).

Furthermore, before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (quoting *Ware*, 651 F.2d at 413). "[A]lthough the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice before [a reviewing court] will remand for further development of the record." *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

The ALJ had no duty to take any steps to resolve an inconsistency in Dr. Iyer's medical opinion if she determined that other evidence in the record provided a sufficient basis on which to make a disability determination. *See Jones*, 857 F. App'x at 591 (holding that the ALJ was under no obligation to recontact a physician for clarification where the ALJ was able to reach a determination regardless); *see also Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Here, the ALJ was able to reach a decision regarding Plaintiff's alleged disability without seeking clarification from Dr. Iyer. (*See* tr. at 36–40.) The ALJ noted three other medical opinions and their relevant findings on which she based her determination of Plaintiff's RFC, including those of state agency psychiatric consultant Dr. Robert Estock, consultative examiner Dr. Samuel Fleming, and state agency medical consultant Dr. Gloria

Sellman. (Tr. at 40, 88–104, 380–412, 512–16, 519–34.) The ALJ followed her assessment of the relevant medical evidence with a detailed explanation of the factors she considered in her final determination of Plaintiff's RFC, even including other findings by Dr. Iyer that were consistent with the other medical evidence. (*See* tr. at 36–40, 99, 104, 506–09, 523–24, 527, 530.) The ALJ incorporated ample evidence into her determination of Plaintiff's RFC notwithstanding the ambiguity in Dr. Iyer's opinion.

Plaintiff alleges neither unfairness nor prejudice, nor does this Court find evidence of either in the record. The record provided sufficient evidence upon which the ALJ based her evaluation of Plaintiff's RFC without necessitating clarification from Dr. Iyer.

### B. The ALJ Properly Considered Plaintiff's Obesity in Determining Plaintiff's RFC.

Plaintiff alleges that the ALJ did not properly evaluate her obesity under the applicable regulations and did not explain how her gross weight would affect her ability to function in a work setting. (Doc. 12 at 24–26.) The Court disagrees for the reasons set forth below.

Effective on May 20, 2019, SSR 19-2P replaced SSR 02-1P as guidance on ALJs' evaluations of claimants' obesity in disability claims. SSR 19-2P, 2019 WL 2374244, at *1 (May 20, 2019). SSR 19-2P specifically states that the revised

guidance applies to "new applications that are filed on or after [May 20, 2019,] and to claims that are *pending* on or after [May 20, 2019]." *Id.* at *5 n.14 (emphasis added). The regulation makes clear that the applicability of SSR 19-2P depends on the date of the ALJ's decision rather than the date of the claimant's application. *Id.* (stating that the Social Security Administration "will use . . . SSR [19-2P] on and after [May 20, 2019] in any case in which [the Social Security Administration] make[s] a determination or decision."). Plaintiff nonetheless contends that SSR 02-1p applies to the ALJ's evaluation of her obesity because she initially filed her claim on March 26, 2019, before SSR19-2P's effective date of May 20, 2019. (Doc. 12 at 23–26; tr. at 105); SSR 19-2P, 2019 WL 2374244, at *5. However, the ALJ rendered her decision in Plaintiff's case on July 24, 2020, over two months after SSR 19-2P came into effect. (Tr. at 27–42); SSR 19-2P, 2019 WL 2374244, at *5. Plaintiff's argument that SSR 02-1P applied despite the express language of SSR 19-2P is baseless, and the ALJ properly applied SSR 19-2P.[3]

---

[3] Plaintiff also cites *Holt v. Saul*, No. 4:19-CV-01894, 2020 WL 2549346, at *3 n.2 (S.D. Tex. May 19, 2020), which held that SSR 19-2P applies only to disability claims *filed* on or after May 20, 2019. (Doc. 12 at 25–26.) However, as explained above, the ruling in *Holt* contradicts the express language of SSR 19-2P. *See* 2019 WL 2374244, at *5 n.14 (May 20, 2019). Moreover, as the Commissioner correctly points out, SSR 19-2P and SSR 02-1P are substantively very similar. (Doc. 13 at 18); *compare* SSR 02-1P, 2002 WL 34686281 (Sep. 12, 2002), *with* SSR 19-2P, 2019 WL 2374244. In any event, Plaintiff argues that the ALJ did not consider her obesity under either regulation, (doc. 12 at 24, 26), which further emphasizes the futility of Plaintiff's argument as to which regulation was appropriate.

To the extent that Plaintiff alleges that the ALJ failed to evaluate Plaintiff's obesity under either regulation, the record clearly refutes such a contention. (Doc. 12 at 24.) Plaintiff does not claim that her obesity imposes greater functional limitations than the ALJ found but merely argues that the ALJ failed to consider Plaintiff's obesity altogether under either SSR 19-2P or SSR 02-1P. (*See* doc. 12 at 24–27.) The ALJ, however, plainly stated that she "considered [SSR] 19-2p involving evaluation of obesity" with respect to Plaintiff's case and that SSR 19-2P requires an ALJ to "consider the limiting effects of obesity when assessing a person's RFC." (Tr. at 38–39); *see also* SSR 19-2P, 2019 WL 2374244, at *4. After listing the standards that SSR 19-2P sets forth for evaluating obesity in an RFC determination, the ALJ repeatedly mentioned Plaintiff's obesity and incorporated it into her RFC finding. (Tr. at 38–40.) The ALJ stated that Plaintiff's "morbid obesity, combined with her degenerative disc disease of the lumbar spine, contributes to her [RFC] to perform a limited range of sedentary work." (Tr. at 39.) Acknowledging that "the additional weight places additional strain on [Plaintiff's] weight-bearing joints," the ALJ considered the functionally limiting effects of Plaintiff's obesity on her ability to stoop, kneel, crouch, and crawl. (*Id.*) Moreover, the ALJ explicitly incorporated Plaintiff's obesity into her final RFC determination, explaining that, despite Plaintiff's other impairments being "more or less controlled," "the combination of

[Plaintiff's] morbid obesity and lower back pain do significantly impair her ability to walk and light/carry [sic] weights." (Tr. at 40.) The ALJ's frequent mentioning of Plaintiff's obesity and her thorough inclusion of its functionally limiting effects in her analysis of Plaintiff's RFC demonstrate the ALJ's adequate consideration of Plaintiff's obesity in determining Plaintiff's RFC.

### C. Substantial Evidence Supports the ALJ's Decision.

Finally, Plaintiff claims that the ALJ's decision lacked substantial evidence because the ALJ relied on a VE's testimony in response to a question that Plaintiff argues "was not based on a correct or full statement of [Plaintiff's] limitations or impairments." (Doc. 12 at 28.) Specifically, Plaintiff alleges that the ALJ's question to the VE did not adequately account for Plaintiff's "back pain, diabetic neuropathy, morbid obesity, depression [or] anxiety." (Doc. 12 at 30.)

During Plaintiff's hearing with the ALJ, a VE testified regarding Plaintiff's ability to find work in the current national economy. (Tr. at 82–86.) The ALJ posed the following hypothetical question to the VE:

> For the following hypothetical questions, please consider an individual the same age, education, and work experience as Ms. Lett. For hypothetical number one, I'd like you to consider that such an individual can lift and carry ten pounds occasionally and less than ten pounds; [sic] frequently; can stand and/or walk for a total of two hours in an eight-hour workday and that's with normal [breaks]; can sit with normal break[s] for a total of six hours in an eight-hour workday; pushing and pulling is the same as for lifting and carrying; occasionally

climb ramps and stairs; never climb ladders, ropes, and scaffolds; can frequently balance; occasionally stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme heat, fumes, odors, dusts, gases, and poor ventilation; no work at unprotected heights; can understand and remember simple instructions; can carry out simple and detailed instructions and sustain attention to tasks for two-hour segments to complete an eight-hour work day; occasional contact with supervision or supervisors, public, and coworkers; would function best with a familiar, repetitive work routine; but should avoid rapid changes and multiple demands; but can adapt to infrequent, well explained changes.

(Tr. at 83–84.) In response, the VE opined that Plaintiff could not perform any of her past relevant work. (*Id.*) Accordingly, the burden shifted to the Commissioner to demonstrate that Plaintiff could perform other relevant work. *Doughty*, 245 F.3d at 1278 n.2.

"The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989)). In order for a VE's answer to satisfy the substantial evidence standard, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones*, 190 F.3d at 1229. Importantly, however, an ALJ is not required to include findings that she has properly rejected because they lack the support in the record. *Crawford*, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the

ALJ had properly rejected as unsupported."); *see also Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1270 (11th Cir. 2007) ("The hypothetical need only include 'the claimant's impairments,' not each and every symptom of the claimant. The characteristics the [ALJ] omitted are among those that [the claimant] alleged to suffer but were either not supported by her medical records or were alleviated by medication.").

The ALJ's hypothetical question included all of the limitations for which there was substantial evidence in the record. Despite Plaintiff's allegations, the ALJ implicitly and adequately accounted for Plaintiff's limitations arising from back pain and obesity in the hypothetical question that she posed to the VE. In her assessment of Plaintiff's RFC, the ALJ noted that "the combination of [Plaintiff's] morbid obesity and lower back pain do significantly impair her ability" to walk and carry weights, and Plaintiff therefore lacks the capacity to perform the full range of sedentary work. (Tr. at 40.) Accordingly, the ALJ included numerous limitations in her determination of Plaintiff's RFC and in the hypothetical question that the ALJ posed to the VE to account for Plaintiff's obesity and back pain. (Tr. at 38); *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011) (stating that an ALJ's hypothetical question to a VE must "include or otherwise account for all of [a plaintiff's] impairments" for the VE's testimony to constitute substantial evidence).

For example, the ALJ asked the VE to assume that the hypothetical individual had the same limitations that the ALJ articulated in Plaintiff's RFC almost verbatim, including that the individual "can lift and carry [ten] pounds occasionally and less than [ten] pounds frequently," "can stand with normal breaks for a total of [two] hours in an [eight]-hour workday" and "can sit with normal breaks for a total of [six] hours in an [eight]-hour workday," that she can "never climb ladders, ropes and scaffolds," and that she can "occasionally stoop, kneel, crouch and crawl." (Tr. at 36, 83–84.) By assessing the functionally limiting effects of Plaintiff's obesity and back pain on her ability to perform basic work activities and incorporating those limitations which had support in the record in the hypothetical question the ALJ posed to the VE, the ALJ adequately accounted for Plaintiff's obesity and back pain such that her reliance on the VE's testimony was proper.

Substantial evidence supports the ALJ's finding that no functionally limiting effects on Plaintiff's capacity to perform basic work activities arose from her diabetic neuropathy, depression, or anxiety, and the ALJ need not have included the alleged impairments in her hypothetical question to the VE. The ALJ found that, following Plaintiff's diagnosis of diabetic neuropathy on February 5, 2019, Plaintiff denied any symptoms arising from diabetic neuropathy or diabetes during her next examination on March 4, 2019, and at all subsequent examinations. (Tr. at 38, 392, 396, 399, 403,

407, 410, 519, 523, 526.) The ALJ also determined that the alleged intensity of Plaintiff's depression and anxiety lacked support in the record. (Tr. at 39.) The ALJ acknowledged that Plaintiff was diagnosed with depressive disorder and anxiety on April 30, 2018, and August 9, 2018, respectively, noting that Plaintiff's examining and consultative physicians consistently classified both as mild. (Tr. at 39, 383, 447–48, 450–51, 453, 456–57, 459–60, 465.) Plaintiff's diagnoses notwithstanding, the ALJ noted that Plaintiff consistently denied having symptoms arising from her depression or anxiety. (Tr. at 39, 512, 524, 527, 541–43, 588.) Specifically, Plaintiff denied 1) having any depressive symptoms during an examination on May 20, 2019; 2) that "her emotional problems affected her work" during a psychological consultative examination on July 29, 2019; 3) that she suffered from any depression, anxiety, or memory loss on October 29, 2019, and November 26, 2019; 4) having any depressive symptoms on January 6, 2020; and 5) having any issues with depression or anxiety during examinations on January 6, 2020, and February 3, 2020. (Tr. at 39, 512, 524, 527, 542–43, 588.) Furthermore, the ALJ pointed out that Plaintiff reported that she was happy during her appointment on February 3, 2020, and that Plaintiff's depression continued to be classified as mild as of March 2, 2020. (Tr. at 39, 541–42.) These objective medical findings constitute substantial evidence in support of the ALJ's determination that Plaintiff's diabetic neuropathy, depression, and

anxiety had no functionally limiting effects on her ability to work, and the ALJ need not have included these unsubstantiated limitations in the hypothetical question that she posed to the VE.

Even so, the ALJ nonetheless accounted for some limitations due to Plaintiff's mental impairments in her RFC determination and in the hypothetical question she posed to the VE. (*See* tr. at 39–40.) For example, the ALJ incorporated Dr. Estock's finding that Plaintiff "should avoid rapid changes and multiple demands," that she "can carry out simple . . . instructions," and that she should have only limited interactions with the public into the RFC determination and the hypothetical question. (Tr. at 36-37, 39-40, 84, 95-96, 100-102.) The hypothetical question and RFC determination also reflect Dr. Fleming's finding that Plaintiff is "intellectually capable of understanding, carrying out, and remembering instructions," which the ALJ noted was consistent with Plaintiff's own reports of having an intact memory and no memory loss. (Tr. at 40, 408, 515, 524.) The ALJ also included in the question that the hypothetical individual "would function best with a familiar, repetitive work routine" and "can adapt best to infrequent, well-explained changes." (Tr. at 84.) The ALJ included all of the mental impairments that were consistent with the record in the hypothetical question that she posed to the VE.

The ALJ properly included only the impairments for which she found support in the record in the hypothetical question that she posed to the VE. Accordingly, the VE's answer constitutes substantial evidence to support the ALJ's determination that Plaintiff is not disabled.

## IV.   Conclusion

Upon review of the administrative record, and considering Plaintiff's arguments, this Court finds that the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 12, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

211913